**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ROBERT EDWARD TIRAN,

    Petitioner,

                                 CASE NO. 2:09-CV-14807

v.                               HONORABLE MARIANNE O. BATTANI
                               UNITED STATES DISTRICT COURT

BLAINE C. LAFLER,

      Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS

    Robert Tiran, ("Petitioner"), confined at the Chippewa Correctional Facility in Kincheloe, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  In his application, filed pro se, petitioner challenges his conviction for first-degree murder, M.C.L.A. 750.316; felony-firearm, M.C.L.A. 750.227b; and felon in possession of a firearm, M.C.L.A. 750.;224f.  For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

### I.  Background

    Petitioner was charged on May 22, 2003 with first-degree felony murder, first-degree premeditated murder, second-degree murder, manslaughter, felon in possession of a firearm, and five counts of felony firearm arising out of the death of Scott Drummond Bakas in Birmingham, Michigan on May 19, 2003.  On June

1

2, 2003, petitioner was bound over to the Oakland County Circuit Court to stand trial on these charges.

On October 2, 2003, petitioner pleaded guilty to first-degree murder, felon in possession of a firearm, and one count of felony-firearm in the Oakland County Circuit Court.  At the plea hearing, defense counsel Larry Kaluzny informed the judge that he had met at least seven times at the jail with petitioner, who had "made up his mind that he wanted to plead guilty to first-degree murder." Counsel indicated to the trial judge that he had informed petitioner that by pleading guilty, he was facing mandatory life without parole and that no Governor to his knowledge had pardoned any prisoner from a first-degree murder charge. Counsel further informed the judge that he had discussed with petitioner his potential chances at trial.  Counsel had advised petitioner that he believed there was the possibility of a jury verdict for the lesser offenses of second-degree murder or manslaughter and had gone over the "pros and cons" of the prosecutor's case with him.  Defense counsel had discussed the matter with petitioner, whom he found to be "rather intelligent".  Counsel had also advised petitioner that if he went to trial, there would be the possibility of appellate issues arising and that by pleading guilty, he would give up his appeal by right.  Kaluzny advised the judge that a court-appointed expert, Dr. Michael Abramsky, had examined petitioner and had concluded that he suffered from no mental illness or insanity.  Counsel had reviewed Dr. Abramsky's report with petitioner.  Counsel

2

had also explained to petitioner the rights that he would have at a jury trial.

Counsel stated that he was satisfied after speaking with petitioner that he was

competent, in that he understood the charges and his rights. Lastly, counsel

informed the judge that petitioner had an opportunity to discuss the matter with

his family. (Tr. 10/2/2003, pp. 4-8).

The trial judge proceeded to discuss at great length with petitioner about

his decision to plead guilty. Petitioner acknowledged that he had met with his

attorney on several occasions, had the opportunity to think about what he wanted

to do with this case for some time, and had weighed the "pros and cons" of the

case. (Id. at pp. 9-10). Petitioner informed the judge that he had received his

GED [general equivalency degree] and had gone to community college. At great

length, the judge advised petitioner that if he pleaded guilty to first-degree

murder, his sentence would be mandatory life in prison and that the judge would

have no sentencing discretion whatsover. Petitioner acknowledged that he was

aware of the mandatory nature of the sentence. (Id. at p. 10). The judge asked

petitioner if he "had the chance to really think about this. This is something that

you want to do, is that correct?" Petitioner answered, "That's correct." (Id. at pp.

10-11). Petitioner acknowledged that counsel had discussed the nature and

sentencing consequences of a first-degree murder conviction with him. Petitioner

admitted that counsel had discussed possible defenses with him, including the

possibility of the jury finding him guilty of the lesser included offenses of second-

3

degree murder or manslaughter.  Petitioner stated that he took all of this information into account in pleading guilty.  Petitioner informed the judge that his counsel had discussed the strengths of the prosecution's case and possible defenses with him, as well as the advantages and disadvantages of going to trial. (Id. at pp. 11-13).  In response to the judge's question, defense counsel indicated that he recommended to petitioner that he go to trial. (Id. at pp. 13-14).  The court again advised petitioner that first-degree murder carried a mandatory life sentence.  The judge also advised petitioner of the penalties of the other charges that he would be pleading to, with the several remaining charges being rescinded by the prosecutor as alternative charges. (Id. at pp. 14-15).

Petitioner was then advised of the rights that he would relinquish by pleading guilty.  The judge again advised petitioner that first-degree murder carried a mandatory sentence of "natural life in prison."  Petitioner also made out a factual basis for the crimes that he pleaded guilty to.  Petitioner specifically admitted to shooting the victim in the back of his head.  At the end of the colloquy, the judge again asked petitioner if he had enough time to think about his plea.  Petitioner advised the judge that he had "ample time" to think about this and that "My plea stands." (Id. at pp. 15-22).

At sentencing, petitioner rejected an offer by his counsel to withdraw his plea of guilty. (Tr. 11/15/2003, pp. 7-8).  Petitioner was sentenced to life without parole on the first-degree murder charge, five years on the felon in possession

4

charge, and received two years on the felony-firearm charge.

Petitioner, through appellate counsel, filed a motion to withdraw his plea, claiming that at the time that he pleaded guilty, he was under the influence of drugs which effected his ability to plead guilty.  On January 12, 2005, the trial court denied petitioner's motion without prejudice after appellate counsel requested more time to procure petitioner's health records from the Oakland County Jail.  On May 3, 2006, defense counsel filed a motion to appoint a psychiatric expert at county expense to review petitioner's medical records from the jail to determine what impact the medications that petitioner had been prescribed at the jail would have had upon petitioner's competency to plead guilty.

On May 24, 2006, the trial court denied the motion stating:

> I spent a lot of time with Mr. Tiran, making sure that he knew what he was doing. There was an expert at the time; I think it was Michael Abramski (phonetically).  He had extreme competent counsel. I mean, I, in my whole life, I've probably dealt with two or three or four people pleading to first degree murder. I followed the court rule to the letter, and I don't' find any basis to go—to grant this motion.

(Video Motion, 5/24/2006, p 4).

Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals, which raised what makes up petitioner's first claim.  The Michigan Court of Appeals denied petitioner's application for leave to appeal. People v. Tiran, No. 271226 (Mich. Ct. App. August 14, 2006)(Cooper, J. would

grant leave to appeal). Petitioner filed a motion for reconsideration, in which he complained that the Michigan Court of Appeals had ruled on his application without the benefit of reviewing a Standard 4 supplemental pro per brief that petitioner had filed, but had apparently been received by that court past the deadline for receiving pleadings. The motion for reconsideration was denied. People v. Tiran, No. 271226 (Mich. Ct. App. September 20, 2006).

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court, which was denied. People v. Tiran, 724 N.W.2d 466 (Mich. 2006).

Petitioner then filed a post-conviction motion for relief from judgment, in which he raised what make up his second through fifth claims in his current petition. The trial judge denied the motion. People v. Tiran, No. 2003-190558-FC (Oakland County Circuit Court, November 15, 2007). The Michigan appellate courts denied petitioner leave to appeal. People v. Tiran, No. 288356 (Mich.Ct.App. March 13, 2009)(Servitto, J. would grant leave to appeal); lv. den. 724 N.W.2d 466 (Mich. 2006).

Petitioner now seeks a writ of habeas corpus on the following grounds:

I. The trial court's refusal to appoint an independent examiner denied the defendant his rights to due process and equal protection of the law and his right to present a defense.

II. Mr. Tiran's guilty plea was involuntarily and unfairly obtained in violation of the state and federal due process clauses because he was involuntarily prescribed multiple medications while awaiting adjudication

6

on this first-degree murder charge.

III. The influence of psychotropic antidepressants during the plea stage directly affected Mr. Tiran's ability to enter a knowing, voluntary, and intelligent plea of guilt to first degree murder making the plea unfairly obtained in violation of the state and federal due process clauses.

IV. Mr. Tiran's trial counsel was constitutionally ineffective for not alerting the court to his client's drug induced state of mind during the plea stage and for not requesting a separate competency hearing.

V. Appellate counsel was constitutionally ineffective for not following through on this issue and for not raising ineffective assistance of trial counsel on direct appeal.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for

habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

7

Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Id. at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" Renico v. Lett, 130 S.Ct. 1855, 1862 (2010)((quoting Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997); Woodford v. Viscotti, 537 U.S. 19, 24 (2002)(per curiam)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S.Ct. 770, 786 (2011)(citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. ( citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003).  Furthermore, pursuant to §

2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. Id.

"[I]f this standard is difficult to meet, that is because it was meant to be." Harrington, 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. Id.  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. (citing Jackson v. Virginia, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)).  Indeed, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." Woodford, 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

9

disagreement." <u>Harrington</u>, 131 S. Ct. at 786-87.

## III.  Discussion

### A.  The procedural default issue.

Respondent contends that all but the first of petitioner's claims are procedurally defaulted, because he raised them for the first time in his post-conviction motion for relief from judgment and failed to show cause for failing to raise these issues in his appeal of right, as well as prejudice, as required by M.C.R. 6.508(D)(3).

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. <u>See Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991).  However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." <u>Harris v. Reed</u>, 489 U.S. 255, 263 (1989). If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. <u>Ylst v. Nunnemaker</u>, 501 U.S.

10

797, 803 (1991).

In the present case, the Michigan Court of Appeals and the Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders did not refer to subsection (D)(3) or mention petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims. Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. See Guilmette v. Howes, 624 F. 3d 286, 291 (6th Cir. 2010). This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of the petitioner's claims. Id.

The trial court rejected petitioner's claims without mentioning M.C.R. 6.508(D)(3) or petitioner's failure to raise the claims on his direct appeal as the basis for rejecting these claims. Because the last reasoned state court decision rejected the petitioner's claims on the merits, this Court concludes that the petitioner's last four claims are not procedurally defaulted. Guilmette, 624 F. 3d 289, 292. Moreover, the petitioner could not have procedurally defaulted his ineffective assistance of appellate counsel claim, because state post-conviction review was the first opportunity that he had to raise an ineffective assistance of appellate counsel claim. Id. at 291. The Court concludes that petitioner's second

11

through fifth claims are not procedurally defaulted.

### B.  Claim # 1.  The expert assistance claim.

Petitioner first contends that the trial judge violated his due process rights by refusing to appoint a psychiatric expert to review petitioner's medical records from the jail in support of petitioner's motion to withdraw his guilty plea on the ground that the prescribed medications had rendered him incompetent to plead guilty.  The trial judge denied the motion, on the ground that petitioner appeared to know what he was doing at the time of his plea and that an expert had already been appointed to evaluate petitioner's mental state.

In Ake v. Oklahoma, 470 U.S. 68, 83 (1985), the U.S. Supreme Court held that when an indigent defendant demonstrates to a trial judge that his or her sanity at the time of the commission of the offense is to be a significant factor at trial, the state must assure a criminal defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in the evaluation, preparation, and presentation of the defense.

In the present case, the trial judge appointed an expert, Dr. Abramsky, to evaluate petitioner's mental state prior to trial.  Dr. Abramsky had evaluated petitioner and had determined that he was mentally competent and had not been insane at the time of the crime.  The trial judge's refusal to appoint a second expert to review petitioner's jail records to determine whether he was competent to plead guilty was not an unreasonable application of clearly established federal

12

law.   "By its own terms, *Ake* 'limit[ed] the right [it] recognize[d]' to 'provision of *one* competent psychiatrist.'" Leavitt v. Arave, --- F.3d ----, No. 2011 WL 1844064, * 4 (9th Cir. May 17, 2011)(quoting Ake, 470 U.S. at 79)(emphasis added).  In light of this "unambiguous language," the Ninth Circuit had held that a defendant "'lacks the right to appointment of a second psychiatrist,' even where the first psychiatrist is alleged to be incompetent or reaches a diagnosis unfavorable to the defense." Id. (quoting Pawlyk v. Wood, 248 F.3d 815, 824 (9th Cir. 2001) and citing Harris v. Vasquez, 949 F.2d 1497, 1516–17 (9th Cir. 1990)). The Supreme Court has never "held that a trial court violated *Ake* by refusing to appoint a second, let alone third, mental health expert." Id.  Other circuits have reached similar conclusions. See Allen v. Mullin, 368 F. 3d 1220, 1236-37 (10th Cir. 2004)(state trial court's refusal to appoint neuropsychologist to assist petitioner charged with murder during competency trial did not violate due process; court did appoint expert, and every witness who testified at competency trial opined that petitioner was competent); Granviel v. Lynaugh, 881 F. 2d 185, 191 (5th Cir.1989)(Ake did not require appointment of an additional psychiatrist); Martin v. Wainwright, 770 F.2d 918, 934 (11th Cir.1985) (Ake did not require appointment of a second neurologist).

The Sixth Circuit has yet to address whether or not a state court is required under Ake to appoint additional psychiatric experts to evaluate a defendant after the trial court has already appointed an expert to evaluate the

defendant's mental state.  However, in <u>Fautenberry v. Mitchell</u>, 572 F. 3d 267, 269-71 (6th Cir. 2009), the Sixth Circuit ruled that a federal district court did not err in denying a state murder's defendant's motion, made pursuant to 18 U.S.C. § 3599f, to appoint a neuropsychologist to assist the defendant in the preparation of his state clemency petition, where the defendant had previously been examined by a neuropsychologist and the defendant did not show that the previous examination was incomplete, outdated, or unreliable.

Likewise, in <u>U.S. v. Clark</u>, 385 F. 3d 609, 617-18 (6th Cir. 2004), the Sixth Circuit held that the federal district court did not abuse its discretion in refusing to authorize additional psychological evaluation of an indigent defendant by a defense expert whose preliminary report agreed with that of the prison psychologist that defendant was competent to stand trial, based on the defense expert's speculation that further examination of the defendant might provide relevant information about the voluntariness of the defendant's post-arrest statement to the FBI.  The Sixth Circuit reasoned that because the district court judge already had a report from the prison psychologist which stated that the defendant had no illness or cognitive deficit that would have hindered his ability to give a voluntary statement, the district court reasonably concluded that the defense expert's services were not necessary to challenge the admissibility of the defendant's statements. <u>Id.</u>

In the present case, the trial judge appointed a psychiatric expert to

14

evaluate petitioner's mental state.  This expert determined that petitioner was

mentally competent to stand trial and to assist in his defense and that he

suffered from no mental defect.  Petitioner has failed to show that Dr. Abramsky

did not review petitioner's medical records from the jail or discuss with petitioner

the medications that he was being prescribed in reaching his determination that

petitioner was competent to stand trial.  Because Ake does not require the

appointment of more than one expert to evaluate a defendant's mental state, the

trial judge's refusal to appoint a second expert to evaluate petitioner's medical

records from the jail, in order to determine his competency to plead guilty, does

not entitle him to habeas relief.

### C. Claims # 2 and # 3.  The involuntary plea claims.

In his second and third claims, petitioner alleges that he did not knowingly

and intelligently plead guilty to the charges against him, because he was forced

against his will to take medications by staff at the Oakland County Jail, which

impeded his ability to knowingly and understandingly plead guilty.  The trial court

judge rejected petitioner's claims on post-conviction review:

> The defendant argues that he should be granted relief from judgment
> because, at the time of pleading guilty, he was overmedicated for
> depression and was in a drug induced haze. The prosecutor has
> presented evidence that the defendant's medication was being offered
> as prescribed, but that the defendant  was not always taking his Zoloft.
> The defendant was interviewed by a court appointed psychiatrist to
> determine if he had a mental insanity defense shortly before he pled
> guilty.  The Court appointed psychiatrist concluded that the defendant
> did not have an insanity defense, and that he was competent to stand

trial. The Court appointed psychiatrist did not observe any medication related issues.

It is very unusual for a criminal defendant to plead guilty to first degree murder. For this reason the court spent extra time with the defendant to make sure that he understood the consequences of what he was doing, as reflected in the transcript. Also, for this reason, the Court recalls this guilty plea. At his guilty plea, the defendant gave every impression of being clear headed and focused on the proceedings. He gave no impression of being groggy, confused, disoriented or in any way mentally incompetent to pleas guilty. He was able to answer appropriately a variety of questions that were not part of the standard guilty plea procedure.

The record reflects that the defendant thought about pleading guilty for over a week. Tr 10/2/2003, p 4. His counsel explained to him the penalty and that the governor had never pardoned anyone on a first degree murder charge. Id., p. 5. He had one of Oakland County's top criminal defense attorneys representing him and counsel was fully prepared for trial.

At sentencing the defendant indicated through counsel that he pled guilty because was guilty and wanted to take responsibility for his actions. Also, he did not want to put the victim's family or his family through the pain of a trial. Tr 11/15/2003, p 7. his counsel suggested at that time that he could move to withdraw his plea, but the defendant was not interested. Id., p. 8.

The Court was satisfied at the time that the guilty was knowingly, understandingly, and voluntarily made. The Court has taken a second look at the transcripts and remains satisfied that this is true. Clearly, the defendant's decision to plead guilty and his resolve to accept the consequences of his actions was made and maintained over a period of at least six weeks. This was not a poorly thought out decision made on the day of trial. The motion for relief from judgment will be denied. People v. Tiran, No. 2003-190558-FC, Slip. Op. at 3-5.

A plea of guilty must be knowingly and voluntarily made. The defendant

must be aware of the "relevant circumstances and likely consequences" of his

16

plea. Hart v. Marion Correctional Institution, 927 F. 2d 256, 257 (6th Cir. 1991). The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he is pleading guilty. King v. Dutton, 17 F. 3d 151, 154 (6th Cir. 1994).  When a petitioner brings a federal habeas petition challenging his plea of guilty, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. Garcia v. Johnson, 991 F. 2d 324, 326 (6th Cir. 1993).  The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness.  Petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. Id.  Additionally, a habeas petitioner bears a heavy burden of rebutting the presumption that his guilty plea, as evidenced by the plea colloquy, is valid. See Hastings v. Yukins, 194 F. Supp. 2d 659, 669 (E.D. Mich. 2002).

In his second claim, petitioner contends that his plea should be set aside because he was involuntarily prescribed several medications while he was incarcerated and awaiting trial on the charges.

In Riggins v. Nevada, 504 U.S. 127 (1992), the Supreme Court held that forcing a defendant to be administered antipsychotic drugs during the course of trial over his objection without a finding by the court that there were no less intrusive alternatives, that the medication was medically appropriate, and that it was essential for the sake of defendant's safety or the safety of others, violates

17

the defendant's Fourteenth Amendment right to due process. Id. at pp. 134-38.

Subsequently, in Sell v. United States, 539 U.S. 166, 179 (2003), the Supreme Court held that anti-psychotic medication may involuntarily be administered to a defendant for the purpose of rendering him or her competent to stand trial, if the government shows that: (1) important government interests are at stake; (2) involuntary medication is substantially likely to render the defendant competent to stand trial and substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel at trial; (3) involuntary medication is necessary to further the government's interests, and less intrusive means are unlikely to achieve substantially the same results; and (4) the administration of the drugs is medically appropriate. Id. at 180-82.

Petitioner's case is distinguishable from Riggins.  Petitioner's medical records from the Oakland County Jail, which the Assistant Attorney General has attached to her answer, show that petitioner was referred for mental health services because he was suffering from "[d]epression, racing thoughts, decreased sleep and appetite. Low voice, limited eye contact and shaking." Respondent's Appendix B.   Petitioner claimed that he was disoriented as to the time, claimed to hear voices, and had difficulty sleeping.  Dr. Anaya concluded that petitioner was depressed, but he ruled out major depressive disorder and bipolar as possible diagnoses.  Dr. Anaya diagnosed petitioner as suffering from adjustment disorder with depressed mood and a non-specific personality

18

disorder.  Dr. Anaya prescribed 150 milligrams of Desyrel to be taken at night

and 37.5 milligrams of Paxil ER to be taken in the morning. Respondent's

Appendix C.

Petitioner signed a consent form for the Desyrel which provided:

I, Robert Tiran voluntarily consent to take the above named medication(s) prescribed by Consultant, Psychiatrist, Oakland County Jail, for treatment purposes during my incarceration.  I have been given the opportunity to discuss this medication, its effectiveness in treatment of my current problem, its known side effects, and to discontinue the medication(s) should it become necessary.

Respondent's Appendix D.

The following month, Dr. Anaya spoke with petitioner again and prescribed

100 milligrams of Zoloft, because petitioner complained of anxiety attacks two or

three times a day.  The Paxil was discontinued. Respondent's Appendix E.

On August 20, 2003, Dr. Anaya saw Petitioner again.  Petitioner told Dr.

Anaya that he was that he was doing "OK" now and would be going to trial the

next month.  Dr. Anaya increased Petitioner's Desyrel to 200 milligrams.

Respondent's Appendix F.

On September 24, 2003, petitioner again spoke with Dr. Anaya and

informed him that he would be given a natural life sentence.  Petitioner's Desyrel

was increased to  300 milligrams. Respondent's Appendix G.

Within two days of petitioner's plea, it was noted that petitioner had

refused to take his Zoloft for the previous five days. Respondent's Appendix H.

19

Petitioner subsequently met with Barb Domanski.  Petitioner informed Domanski that he had attempted to go without taking the medication(presumably the Zoloft), but then began feeling depressed again.  Petitioner also told Domanski that "he has not been sleeping very well and wanted to know if the Desyrel could be changed to something else."  Domanski told petitioner that he needed to discuss these issues with his doctor. Respondent's Appendix I.

On October 8, 2003, Petitioner spoke again with Dr. Anaya, who kept petitioner on the same amount of Desyrel, Appendix J, and discontinued the Zoloft as of October 6, 2003. Appendices G-J.  On November 12, 2003, Petitioner saw Dr. Anaya for the last time, who continued the prescription for Desyrel. Respondent's Appendix K.

Petitioner's situation is different from the defendant in Riggins because he actively sought out psychiatric treatment, expressly consented to taking Desyrel, and did not affirmatively object to taking the Zoloft. See Benson v. Terhune, 304 F. 3d 874, 881-82 (9th Cir. 2002); See also Basso v. Thaler, 359 Fed. Appx. 504, 507-08 (5th Cir. 2010).  There are no cases which hold "the voluntary administration of medication" violates a defendant's right to due process of law. Basso, 359 Fed. Appx. at 508.  Moreover, it was not an unreasonable application of Supreme Court precedent for the Michigan courts to rule that petitioner knowingly and voluntarily agreed to accept these medications, because there is no evidence from the record that jail staff forced petitioner to

20

take these medications against his will, petitioner made a free and deliberate choice to take these medications, and although petitioner may have not given informed consent with respect to the Zoloft medication, the records establish that he was capable of thinking logically and expressing himself in a sufficient manner to refuse treatment or ask for more information before he took these medications. <u>Benson</u>, 304 F. 3d at 882-83.

In his third claim, petitioner alleges that he was incompetent to plead guilty because he was under the influence of Zoloft and Desryel.

A defendant may not be put to trial unless he or she has a sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding and a rational as well as a factual understanding of the proceedings against him. <u>Cooper v. Oklahoma</u>, 517 U.S. 348, 354 (1996).  The competency standard for pleading guilty is the same as the competency for standing trial and is not a higher standard. <u>Godinez v. Moran</u>, 509 U.S. 389, 398 (1993).

In rejecting petitioner's third claim in his post-conviction motion, the state trial judge made a factual finding that petitioner was competent at the time he entered his guilty plea.  A determination by a state trial court that a habeas petitioner was competent to stand trial is a finding of fact that is entitled to the presumption of correctness for purposes of federal habeas review. See e.g. <u>Mackey v. Dutton</u>, 217 F. 3d 399, 412 (6th Cir. 2000).  A state court's factual

determination regarding a defendant's competency to plead guilty is also entitled to the presumption of correctness in habeas corpus proceedings. Hastings v. Yukins, 194 F. Supp. 2d at.  Petitioner has the burden of rebutting the presumption of correctness of the state court's determination of his competency by clear and convincing evidence. Doughty v. Grayson, 397 F. Supp. 2d 867, 876 (E.D. Mich. 2005).

A habeas petitioner's mental competency claims "can raise issues of both substantive and procedural due process." Hastings v. Yukins, 194 F. Supp. 2d at 659.  A habeas petitioner may make a procedural competency claim by alleging that the state trial court failed to conduct a competency hearing after the petitioner's mental competency was put in issue.  However, to succeed on the procedural claim, a habeas petitioner must establish that the state trial judge ignored facts which raised a "bona fide doubt" regarding petitioner's competency to stand trial. Walker v. Attorney General for the State of Oklahoma, 167 F. 3d 1339, 1343 (10th Cir. 1999)(internal citations omitted); Hastings, 194 F. Supp. 2d at 670.  Evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinions on competence to stand trial are all relevant in determining whether further inquiry by a trial court on a defendant's mental state is required, but even one of these factors standing alone, may in some circumstances, be sufficient to trigger a further inquiry into a defendant's mental fitness to stand trial. Drope v. Missouri, 420 U.S. 162, 180 (1975).  However,

22

there are no fixed or immutable signs which invariably indicate the need for a further inquiry to determine the fitness to proceed. Id.  There must be some manifestation or conduct on a habeas petitioner's part "to trigger a reasonable doubt as to his or her competency." Hastings v. Yukins, 194 F. Supp. 2d at 671. A trial court is permitted to rely on its own observations of the defendant's comportment or demeanor to determine whether that defendant is competent to stand trial. Id. (citing to Bryson v. Ward, 187 F. 3d 1193, 1201 (10th Cir. 1999)). A full competency hearing is necessary only when a court has a reason to doubt a defendant's competency to stand trial. Godinez v. Moran, 509 U.S. at 401, n. 13; Bryson, 187 F. 3d at 1202.  Petitioner's procedural competency claim fails because there is no evidence in the record which should have raised a bona fide doubt with the trial court as to petitioner's competency to plead guilty.

A habeas petitioner can also raise a substantive competency claim by alleging that he was tried and convicted while mentally incompetent.  However, a habeas petitioner raising a substantive claim of incompetency is not entitled to a presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence. Walker v. Attorney General for the State of Oklahoma, 167 F. 3d at 1344; Hastings v. Yukins, 194 F. Supp. 2d at 671.  To obtain habeas relief on a substantive incompetence claim, a habeas petitioner must present evidence which is sufficient "to positively, unequivocally, and clearly generate a real, substantial and legitimate doubt as to his mental

23

capacity" to stand trial. Thirkield v. Pitcher, 199 F. Supp. 2d 637, 653 (E.D. Mich. 2002)(internal quotations omitted).  A habeas petitioner is entitled to an evidentiary hearing on the issue of his competency to stand trial "if he presents sufficient facts to create a real and substantial doubt as to his competency, even if those facts were not presented to the trial court." Id.  However, "[A]lthough retrospective determinations of competency are not prohibited, they are disfavored, and the Court will give considerable weight to the lack of contemporaneous evidence of petitioner's incompetence." Thirkield, 199 F. Supp. 2d at 653.

Petitioner has failed to present evidence which clearly and unequivocally raises a substantial and legitimate doubt as to his mental capacity to plead guilty. The only evidence that petitioner points to is the fact that he was receiving two anti-depressant medications in the weeks prior to pleading guilty.  One of these medications, Zoloft, petitioner stopped taking several days prior to entering his plea of guilty.  Petitioner has presented no evidence that he was unable to understand the proceedings against him or assist his attorney.  The trial judge engaged in a lengthy colloquy with petitioner, in which he clearly and lucidly answered the judge's questions in an appropriate manner.  There is nothing in the record to indicate that petitioner did not understand the proceedings or responded inappropriately to the judge's questions or to his own counsel's comments.  Significantly, nothing in the record establishes that petitioner was

24

sleeping, drowsy, or unable to participate in the proceedings. Petitioner has

presented no evidence that he was not in possession of his mental facilities at

the time that he entered his plea of guilty, therefore, any "after the fact"

incompetency claim would be without merit. See United States v. Calvin, 20 Fed.

Appx. 452, 453 (6th Cir. 2001); Hastings v. Yukins, 194 F. Supp. 2d at 672.

Petitioner is not entitled to habeas relief on this claim because there was nothing

in the guilty plea transcript to indicate that the Desryel or Zoloft medications

being taken by petitioner reduced his understanding of the proceedings or

prevented him from making an intelligent decision to plead guilty. See e.g.

Thirkield, 199 F. Supp. 2d at 653; Hoffman v. Jones, 159 F.Supp.2d 648, 655-57

(E.D. Mich. 2001). Petitioner is not entitled to habeas relief on his third claim.

**D. Claims # 4 and # 5.  The ineffective assistance of counsel claims.**

In his fourth and fifth claims, petitioner alleges that he was denied the

effective assistance of trial and appellate counsel.

To show that he was denied the effective assistance of counsel under

federal constitutional standards, a defendant must satisfy a two prong test. First,

the defendant must demonstrate that, considering all of the circumstances,

counsel's performance was so deficient that the attorney was not functioning as

the "counsel" guaranteed by the Sixth Amendment. Strickland v. Washington,

466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong

presumption that counsel's behavior lies within the wide range of reasonable

25

professional assistance. Id. In other words, petitioner must overcome the

presumption that, under the circumstances, the challenged action might be

sound trial strategy. Strickland, 466 U.S. at 689.  Second, the defendant must

show that such performance prejudiced his defense. Id.  To demonstrate

prejudice, the defendant must show that "there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have

been different." Strickland, 466 U.S. at 694.  The Strickland standard applies as

well to claims of ineffective assistance of appellate counsel. See Whiting v. Burt,

395 F. 3d 602, 617 (6th Cir. 2005).  The Supreme Court's holding in Strickland

places the burden on the defendant who raises a claim of ineffective assistance

of counsel, and not the state, to show a reasonable probability that the result of

the proceeding would have been different, but for counsel's allegedly deficient

performance. See Wong v. Belmontes, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a

federal court believes the state court's determination' under the *Strickland*

standard 'was incorrect but whether that determination was unreasonable-a

substantially higher threshold.'" Knowles v. Mirzayance, 129 S. Ct. 1411, 1420

(2009)(quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)).  "The pivotal

question is whether the state court's application of the *Strickland* standard was

unreasonable.  This is different from asking whether defense counsel's

performance fell below *Strickland's* standard." Harrington v. Richter, 131 S. Ct.

26

at 785.  Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles*,* 129 S. Ct. at 1420 (citing Yarborough v. Alvarado, 541 U.S. at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a Strickland claim brought by a habeas petitioner. Id.  This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."Harrington, 131 S. Ct. at 785.  "Surmounting *Strickland's* high bar is never an easy task." Id. at 788 (quoting Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

> Harrington v. Richter, 131 S. Ct. at 788.

Petitioner first claims that his trial counsel was ineffective for failing to inform the trial judge that petitioner was under the influence of prescription drugs at the time of his plea or for failing to request a hearing on petitioner's competence to plead guilty prior to petitioner entering his plea of guilty.

27

As this Court indicated in rejecting petitioner's third claim, petitioner has presented no evidence that he was not mentally competent at the time he entered his plea of guilty.  The state trial judge who accepted his plea factually found that petitioner was mentally competent at the time that he pleaded guilty and the record from the guilty plea supports this finding.  Counsel's failure to request a competency hearing did not prejudice petitioner, so as to support claim of ineffective assistance of counsel, when a "reasonable judge, situated as was trial judge who accepted defendant's guilty plea, would not have experienced doubt" about petitioner's competency. See Nemzek v. Jamrog, 93 Fed.Appx. 765, 766-67 (6th Cir. 2004).

Petitioner further claims that trial counsel was ineffective for failing to investigate possible defenses to the first-degree murder charge prior to petitioner entering his plea of guilty.  Defense counsel must investigate all appropriately substantial defenses available to the defendant and must assert them in a timely manner. Fornash v. Marshall, 686 F. 2d 1179, 1187 (6th Cir. 1982).  The right to the effective assistance of counsel is violated where, through his or her own ineffectiveness or incompetence, defense counsel deprives a criminal defendant of a substantial defense. Williams v. Abshire, 544 F. Supp. 315, 318 (E.D. Mich. 1982).

In the present case, trial counsel at the plea hearing placed on the record that he had considered and discussed with petitioner the possibility of going to

28

trial and seeking a verdict on the lesser included offenses of second-degree murder and voluntary manslaughter.  Petitioner acknowledged on the record that counsel had discussed these defenses with him.  Petitioner's claim is unsupported.

Although trial counsel can be ineffective for advising a client to plead guilty to first-degree murder, because in Michigan it carries a nonparolable life sentence, See e.g. Miller v. Straub, 299 F. 3d 570 (6th Cir. 2002), the record establishes that counsel did not advise petitioner to plead guilty to first-degree murder but had instead advised him to take the case to trial.  Petitioner is not entitled to habeas relief on his fourth claim.

In his fifth claim, petitioner contends that his appellate counsel was ineffective for failing to raise his second through fifth claims on his direct appeal.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. Evitts v. Lucey, 469 U.S. 387, 396-397 (1985).  It is well-established, however,  that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. See Jones v. Barnes, 463 U.S. 745, 751 (1983).


This Court has already determined that the petitioner's second through fifth claims are meritless.  "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" Shaneberger v. Jones, 615 F. 3d

29

448, 452 (6th Cir. 2010); cert. den. 131 S. Ct. 1013 (2011)(quoting Greer v.

Mitchell, 264 F.3d 663, 676 (6th Cir. 2001)).  Petitioner has therefore failed to

show that appellate counsel was ineffective for failing to raise these claims on

his appeal of right.  Petitioner is not entitled to habeas relief on his fifth claim.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability ("COA") in

order to appeal the denial of a habeas petition for relief from either a state or

federal conviction. [1] 28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA

"only if the applicant has made a substantial showing of the denial of a

constitutional right." 28 U.S.C. § 2253(c)(2).  When a federal district court rejects

a habeas claim on the merits, the substantial showing threshold is met if the

petitioner demonstrates that reasonable jurists would find the district court's

assessment of the constitutional claim debatable or wrong. See Slack v.

McDaniel, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by

demonstrating that ... jurists could conclude the issues presented are adequate

to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. at

327.  In applying this standard, a district court may not conduct a full merits

---

[1]  Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

review, but must limit its examination to a threshold inquiry into the underlying

merit of the petitioner's claims. Id. at 336-37.

Although the Court believes that its decision in denying petitioner habeas

relief on these claims was correct, the Court will grant petitioner a certificate of

appealability for two reasons.

First, petitioner pleaded guilty to first-degree murder, which as has already

been mentioned, carries a mandatory nonparolable life sentence.  Any doubt

regarding whether to grant a COA from the denial of a petition for federal habeas

relief is resolved in favor of the habeas petitioner, and the severity of the penalty

may be considered in making that determination. See Newton v. Dretke, 371 F.

3d 250, 253 (5th Cir. 2004).

Secondly, this Court notes that on his direct appeal, Judge Cooper

indicated that she would have granted petitioner leave to appeal what now

amounts to his first claim.  On his post-conviction appeal, Judge Servitto

indicated that she would have granted petitioner leave to appeal on what amount

to his remaining four claims.  The fact a judge in each of petitioner's appeals

before the Michigan Court of Appeals would have granted him leave to appeal

these claims shows that jurists of reason could decide these claims  differently or

that the issues deserve encouragement to proceed further. See Robinson v.

Stegall, 157 F. Supp. 2d 802, 820, fn. 7 & 824 (E.D. Mich. 2001)(habeas

petitioner entitled to certificate of appealability from district court's determination

that state appellate court reasonably applied federal law in determining that any

Confrontation Clause error was harmless, where one judge on the Michigan

Court of Appeals dissented and indicated that he would have reversed

petitioner's conviction; dissent showed that a reasonable jurist found that the

issue should have been decided differently).

Petitioner is also granted leave to proceed on appeal in forma pauperis, as

any appeal would not be frivolous.  A court may grant in forma pauperis status if

the court finds that an appeal is being taken in good faith. See 28 U.S.C. §

1915(a)(3); Fed. R.App.24 (a); Foster v. Ludwick, 208 F. Supp. 2d 750, 765

(E.D. Mich. 2002).

## V. CONCLUSION

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is

**DENIED WITH PREJUDICE**. (Dkt. # 1.)

**IT IS FURTHER ORDERED** that the Court issues petitioner a certificate of

appealability with respect to his first, second, third, fourth, and fifth claims.

**IT IS FURTHER ORDERED** that petitioner is granted leave to proceed on

appeal in forma pauperis.

s/Marianne O. Battani
**HON. MARIANNE O. BATTANI**
UNITED STATES DISTRICT COURT

DATED: June 23, 2011

32

<u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on the above date a copy of this Opinion and Order was served upon the Petitioner, Robert Edward Tiran, via ordinary U.S. Mail, and Counsel for the Respondent, electronically.

                                           <u>s/Bernadette M. Thebolt</u>
                                           Case Manager